IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DOROTHY JANE LUTHER and QUENTIN MORISETTE,<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA, and DOES 1 through 100 inclusive,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:11-cv-268 BCW<br><br>Magistrate Judge Brooke Wells |

This matter is before the Court on Defendant United States of America's Motion for Summary Judgment.[1] Pursuant to Federal Rule 12(b)(1) and 56, Defendant seeks summary judgment based on Plaintiffs' alleged failure to establish a waiver of sovereign immunity that provides this Court with jurisdiction.[2] For the reasons set forth below, the Court will grant Defendant's Motion.

## I. BACKGROUND

This matter arises out of a lightning-caused wildfire that started on public land and later damaged the Plaintiffs' property. During the summer of 2009 Plaintiffs' property located in New Harmony, Utah was burned when the lightning-caused wildfire spread into the town. Plaintiffs' property consisted of a "fully-fenced 20 acre parcel, an agricultural building and cannery (which also served as their living quarters), a water pump house, corrals, pastureland, and personal property."[3]

---

[1] Docket no. 24.

[2] *See* Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 56.

[3] Op. p. 2, docket no. 26.

The fire, known as the Mill Flat Fire, began on approximately July 25, 2009 in the high wilderness area outside of New Harmony in the Dixie National Forest. The fire was small and slow moving, initially only burning one tree. The US Forest Service decided to not extinguish the fire and instead let it burn so as to benefit the ecology of the area. Forest Service employees monitored its size for more than a month. The Mill Flat Fire grew in size gradually. By August 21, 2009 the fire had grown to 589 acres and by August 23 it was 971 acres.

On the afternoon of August 29, 2009, the wind changed unexpectedly blowing the fire down from the mountain peaks carrying it toward New Harmony. The Mill Flat Fire, which had burned only a thousand acres in 30 days, quickly erupted to burn approximately 10,000 acres in the next six hours.

Before the fire reached New Harmony, Forest Service firefighters attempted to stop its progress by starting a backfire to burn fuel ahead of the main fire and block its progress. The back fire was along a fire break located near the rear of Plaintiffs' property. This attempt failed because "the backfire was only three or four feet high when it was overtaken by a 200-foot wall of flames a mile to a mile and a half wide."[4] In addition, evidence in the record indicates that the fire break had not been properly maintained by the US Forest Service and had some inappropriate overgrowth and vegetation.[5]

The Forest Service Incident Commander ordered the firefighters to retreat for their own safety and the Mill Flat Fire then spread to Plaintiffs' property destroying the vegetation and structures. Plaintiffs rescued their horse and a few personal belongings before being evacuated.

During the course of the fire, Plaintiffs communicated with the US Forest Service several times to ask about the status of the fire. Each time they were assured that they should not be

---

[4] Mtn. p. 4, docket no. 24.

[5] Op. p. 3.

worried because the fire was burning in a remote location and not toward New Harmony. During this time frame there were also public meetings held in New Harmony about the Mill Flat Fire and a state official offered to have his crews remove vegetation from private property to help make the property "fire wise." Plaintiffs left the trees and vegetation on their property.

Plaintiffs assert that the US Forest Service was negligent in the handling of the fire. "Because of their negligent management, a single-tree burn became a 7,600 acre large inferno that displaced an entire town and destroyed much private property, including Plaintiffs'."[6] Plaintiffs' claim of negligence encompasses the Forest Service's fire-fighting tactics including the backfire, and the reassurances that came prior to the fire burning New Harmony. Plaintiffs seek $650,766.08 in compensation for lost property and lost value. Prior to filing this suit, Plaintiffs filed a timely administrative claim with the US Department of Agriculture who then subsequently notified Plaintiffs that they could file the instant civil suit pursuant to the Federal Tort Claims Act.

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[8] The Court is required to construe all facts and reasonable inferences in the light most favorable to the

---

[6] Op. p. 3.

[7] Fed. R. Civ. P. 56(a).

[8] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

nonmoving party.[9]  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[10]  "If the burden of persuasion at trial would be on the non-moving party, ... the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[11]  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."[12]  The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, and answers to interrogatories that support summary judgment.  To defeat a motion for summary judgment, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts."[13]  Rather, a plaintiff must come forward with some evidence establishing his claim.

### III. DISCUSSION

Plaintiffs bring this action pursuant to the Federal Tort Claims Act (FTCA).  The FTCA waives sovereign immunity for the negligent or wrongful act or omission of federal employees acting within the scope of their office or employment.  The FTCA allows private individuals to bring claims against the United States

> for injury or loss of property, or personal injury or death caused by the negligent
> or wrongful act or omission of any employee of the Government while acting
> within the scope of his office or employment, under circumstances where the

---

[9] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[10] *Anderson*, 477 U.S. at 249.

[11] *Celotex Corp. V. Catrett*, 477 U.S. 317, 331 (1986).

[12] *Anderson*, 477 U.S. at 252.

[13] *Matsushita*, 475 U.S. at 586.

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[14]

To prevail here, however, Plaintiffs must prove more than mere negligence. Rather, they must also first prove that their claims are not based upon actions that are immunized from liability under exceptions to the FTCA's waiver of sovereign immunity. Among these exceptions are the two asserted by Defendant in the instant case: (1) The discretionary function exception;[15] and (2) the misrepresentation exception.[16] The discretionary function exception is found in 28 U.S.C. § 2680(a) and applies to claims of negligence that are based on the exercise of a discretionary function or duty by federal employees.[17] The misrepresentations exception applies to "[a]ny claim arising out of . . . misrepresentation [or] deceit . . . ."[18] If a claim against the government falls within an exception to the FTCA, the cause of action must be dismissed for want of federal subject matter jurisdiction.[19] The Court considers each of these alleged exceptions in turn.

---

[14] 28 U.S.C. § 1346(b)(1).

[15] *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction.") (internal quotations omitted).

[16] *Trentadue v. United States*, 386 F.3d 1322, 1334 (10th Cir. 2004) ("Application of the misrepresentation exception . . . presents a threshold jurisdictional determination . . . .") *partially overruled on other grounds by Estate of Trentadue ex. rel. Aguilar v. United States*, 397 F.3d 840 (10th Cir. 2005) .

[17] 28 U.S.C. § 2680(a) provides an exception to

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

[18] 28 U.S.C. 2680(h).

[19] *See Dalehite v. Untied States*, 346 U.S. 15, 31 (1953) (holding that where discretionary function exception of § 2680(a) applied, district court lacked subject matter jurisdiction over cause of action), *partially overruled on other grounds by Rayonier, Inc. v. United States*, 352 U.S. 315 (1957).

### A. The Discretionary Function Exception

To determine whether the discretionary function exception applies here, the Court looks to the two-pronged test found in *Berkovitz v. United States*.[20] The Tenth Circuit has summarized the *Berkovitz* test as follows:

> The first step of the Berkovitz test requires this court to determine whether the challenged conduct "involves an element of judgment or choice," in which case it is discretionary and falls within the language of the exception, or whether it involves "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow," in which case the exception does not apply.[21]

If the conduct involves discretionary judgment under this first step then the Court applies the second step, "which requires this court to 'determine whether that judgment is the kind that the discretionary function exception was designed to shield.' The exception protects only those discretionary actions or decisions which are 'based on considerations of public policy.'"[22] Plaintiffs contend that the alleged negligent conduct failed to satisfy either prong of the *Berkovitz* test.

### (i) *Berkovitz* First Prong

To prevail on the first prong, "Plaintiffs must demonstrate that the challenged decision involved no 'element of judgment or choice.'"[23] They must show that Forest Service employees violated a federal statute, regulation, or policy that is both "specific and mandatory."[24] Plaintiffs point to a failure by Defendant to abide by the Forest Service Manual (FSM) § 2324.2, Utah Code Ann. §§ 76-6-104 and 76-6-105, and FSM 5130. The Court considers each in turn.

---

[20] 486 U.S. 531, 536 (1988).

[21] *Elder v. U.S.*, 312 F.3d 1172, 1176 (10th Cir. 2002) (quoting *Berkovitz*, 486 U.S. at 536).

[22] *Id.* (internal citations omitted) (quoting *Berkovitz*, 486 U.S. at 537).

[23] *Id.* (quoting *Kiehn v. U.S.*, 984 F.2d 1100, 1102 (10th Cir. 1993)).

[24] *Aragon*, 146 F.3d at 823.

### a. FSM 2324.2

Plaintiffs first argue that according to the FSM the US Forest Service "has a mandate to reduce to an acceptable level the risk of wildfire escaping the wilderness and infiltrating a populated area."[25] In support of their argument Plaintiffs cite to FSM 2324.22(6)(d) and the objectives portion concerning the management of fire found at the first of § 2324.2.

FSM 2324.22(6)(d) provides:

> Lightning-caused fires cannot be allowed to burn because they will pose serious threats to life and/or property within wilderness or to life, property, or natural resources outside of wilderness.

At first glance this subsection appears to provide a mandate against allowing lightning-caused fires to burn. Taken in context of the entire section, however, this subsection actually describes one condition under which the Forest Service "may ignite a prescribed fire in wilderness to reduce unnatural buildups of fuels."[26] Thus, this subsection fails to provide a "statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow."[27]

---

[25] Op. p. 6.

[26] FSM 2324.22(6) reads:

> Forest Service managers may ignite a prescribed fire in wilderness to reduce unnatural buildups of fuels only if necessary to meet at least one of the wilderness fire management objectives set forth in FSM 2324.21 and if all of the following conditions are met:
>
> a. The use of prescribed fire or other fuel treatment measures outside of wilderness is not sufficient to achieve fire management objectives within wilderness.
>
> b. An interdisciplinary team of resource specialists has evaluated and recommended the proposed use of prescribed fire.
>
> c. The interested public has been involved appropriately in the decision.
>
> d. Lightning-caused fires cannot be allowed to burn because they will pose serious threats to life and/or property within wilderness or to life, property, or natural resources outside of wilderness.

[27] *Berkovitz,* 486 U.S. at 536-37.

7

Section 2324.2 provides that

The objectives of fire management in wilderness are to:

1. Permit lightning caused fires to play, as nearly as possible, their natural ecological role within wilderness.
2. Reduce, to an acceptable level, the risks and consequences of wildfire within wilderness or escaping from wilderness.

The Court finds there is nothing in these objectives that mandates a certain course of action for Defendant to follow. As noted previously, to prevail on the first prong of the *Berkovitz* test, "Plaintiffs must demonstrate that the challenged decision involved no 'element of judgment or choice.'"[28] These "objectives" are precisely the type of directives that judgment and choice are based on and are not sufficiently specific to satisfy the first prong.

Finally, as noted by another court, the FSM provides objectives and policies for fighting forest fires, not a course of action for an employee to follow.[29] An objective or policy is not "the kind of 'specific and mandatory regulation or statute [or policy] which creates clear duties incumbent upon the governmental actors.'"[30] Thus, Plaintiffs argument fails.

   b. **Utah Code Ann. §§ 76-6-104 and 76-6-105**

Plaintiffs next contend that by invoking 28 U.S.C. § 1346(b)(1)[31] the United States could be held liable because Plaintiffs could pursue a private person for liability under Utah Code Ann. §§ 76-6-104[32] and 76-6-105.[33] Thus the first prong of *Berkovitz* is met.

---

[28] *Elder*, 312 F.3d at 1176 (quoting *Kiehn v. U.S.*, 984 F.2d 1100, 1102 (10th Cir. 1993)).

[29] *See Graves v. United States*, 2007 WL 776101 (E.D.Cal. March 12, 2007); *Berkovitz*, 486 U.S. at 536.

[30] *Parsons v. United States*, 811 F.Supp. 1411, 1416 (E.D.Cal. 1992) (quoting *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989)).

[31] 28 U.S.C. § 1346(b)(1) provides:

Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United

The Court disagrees and finds these arguments unpersuasive and irrelevant because the Supreme Court stated in *Berkovitz* that "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."[34] The cited portions of the Utah Code are not federal statutes or regulations. Further, 28 U.S.C. § 1346 does not provide an alternative means pursuant to state statutes for the United States to waive its sovereign immunity under the FTCA. Indeed if this was the case, the FTCA's exceptions would be swallowed up by state laws and regulations that provide individual liability. Such a result would undermine Congress' intent in creating exceptions to the FTCA.

---

    States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

[32] Utah Code Ann. § 76-6-104 provides:

    (1) A person is guilty of reckless burning if the person:

        (a) recklessly starts a fire or causes an explosion which endangers human life;

        (b) having started a fire, whether recklessly or not, and knowing that it is spreading and will endanger the life or property of another, either fails to take reasonable measures to put out or control the fire or fails to give a prompt fire alarm;

        (c) builds or maintains a fire without taking reasonable steps to remove all flammable materials surrounding the site of the fire as necessary to prevent the fire's spread or escape; or

        (d) damages the property of another by reckless use of fire or causing an explosion.

[33] Op. p. 16-17. Utah Code Ann. § 76-6-105 provides:

    (1) Any person is guilty of causing a catastrophe if the person causes widespread injury or damage to persons or property by:
    . . .
        (b) explosion, fire, flood, avalanche, collapse of a building, or other harmful or destructive force or substance that is not a weapon of mass destruction.

[34] *Berkovitz,* 486 U.S. at 536.

### c. FSM 5130

Plaintiffs cite to FSM 5130.3(2) arguing that Defendant was negligent in failing to give priority to the safety of the public by *inter alia* not warning the residents of New Harmony of the impending danger of the fire.[35] FSM 5130.3(2) provides:

> Priority for Safety. In conducting wildland fire suppression, responsible officials shall give first priority to the safety of firefighters, other personnel, and the public. Consistent with this priority, responsible officials shall conduct wildland fire suppression in a timely, effective and efficient manner.

The Court is not persuaded by Plaintiffs' position. In their argument Plaintiffs emphasize only a portion of this guideline relating to public safety and fail to mention the other competing interests including the safety of firefighters and other personnel.[36] Further, as noted previously, the FSM provides objectives and policies for fighting forest fires, not a course of action for an employee to follow and thus this section fails to meet the first prong of the *Berkovitz* test.[37]

### d. The Mill Flat Fire Review Document and Other Arguments

In March 2010, Defendant released a document entitled Mill Flat Fire Review. In this document "several employees of the US Forest Service and one employee of the State of Utah reviewed the handling of the Mill Flat Fire."[38] Plaintiffs argue that the Fire Review document indicates Defendant failed to follow required procedures. For example, Plaintiffs cite to Defendant's failure to update computer models that predicted the Mill Flat Fire's behavior.[39] In addition Plaintiffs argue that Defendant failed to assign proper personnel to the fire and failed to properly maintain the fire break located near the edge of Plaintiffs' property.

---

[35] Op. p. 17.

[36] In their responses Plaintiffs cite that 5230.3(2) provides "In conducting wildland fire suppression, responsible officials <u>shall</u> give <u>first priority</u> to the safety of . . . the public." Op. p. 17.

[37] *See Parsons*, 811 F.Supp. at 1416; *Graves*, 2007 WL 776101; *Berkovitz*, 486 U.S. at 536.

[38] Op. p. 7. Plaintiffs attached a copy of the document as exhibit A to their memoranda.

[39] Op. p. 7.

All of these arguments must fail. Once again Plaintiffs do not indicate any specific or mandatory regulation, statute or policy that creates a duty upon Defendant. Further review of the record also indicates that Plaintiffs' arguments are undermined by deposition testimony. For example Bevan Killpack, the district ranger and administrative officer during the Mill Flat Fire, testified there was another large fire in the district that was "just taking resources and using a lot of resources that we were sharing. . . . . So resources were not available. And that was probably the biggest concern."[40] Thus, the assignment of resources, how to use those resources and when to utilize them are all classic elements of choice and support Defendant's position that the first prong of the discretionary function exception are met.

Accordingly, based upon the foregoing, the Court concludes the actions of Defendant in fighting the Mill Flat Fire met the first prong of the discretionary function exception.[41]

**(ii)** *Berkovitz Second Prong*

Having concluded that decisions regarding the Mill Flat Fire involved discretionary judgment, the Court now looks to the second prong of the *Berkovitz* test. The Court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield."[42] Only decisions "susceptible to policy analysis" are protected by the

---

[40] Killpack Depo. at 23:16-24:2 (attached to Defs' mtn ex. 5).

[41] *See e.g., Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998) (holding that Forest Plan and other standards and procedures for fire suppression "do not eliminate discretion because they do not tell firefighters how to fight the fire"); *McDougal v. U.S. Forest Service*, 195 F.Supp.2d 1229, 1238-39 (D. Or. 2002) (holding that FSM did not require Forest Service employees to designate or suppress wildfire caused by lightning in a particular manner but afforded discretion); *Thune v. United States*, 872 F. Supp. 921, 924-25 (D. Wyo. 1995) (holding that FSM outlined discretion of Forest Service employees as "protector[s] of public lands" regarding setting and managing a controlled burn); *Pope & Talbot, Inc. v. Dep't of Agric.* 782 F.Supp. 1460, 1466-67 (D. Or. 1991) (holding that under the FSM, decisions regarding forest closure are discretionary); *DeFrees v. United States*, 738 F. Supp. 380, 385 (D. Or. 1990) (holding that Forest Service employees working to suppress rash of fires "had considerable discretion in deciding how to allocate suppression resources . . . establishing priorities, assigning government personnel and equipment, and deciding what private resources, if any, should be used").

[42] *Berkovitz*, 486 U.S. at 536.

exception.[43] The pertinent inquiry is whether the decision "implicates the exercise of a policy judgment of a social, economic, or political nature."[44] Plaintiffs argue that it does not. Plaintiffs assert that the judgment of the US Forest Service employees was not based on considerations of public policy because "the number one concern when handling a fire is public safety."[45] Thus, Defendant's decision to not warn the public about the danger posed by the fire and the backfire was not a decision based in social, economic, or political policy and should not be shielded by the discretionary exception. The Court disagrees. Plaintiffs' argument focuses on whether or not the Forest Service employees actually engaged in policy judgments. The relevant inquiry, however, focuses on "the nature of the actions taken and whether they are susceptible to policy analysis."[46]

The Supreme Court has held that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."[47] Accordingly, there must be facts in the record set forth by Plaintiffs which support a finding that Defendant's actions were not grounded in policy. The Court focuses "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."[48]

The Court finds Defendant is entitled to the presumption set forth in *Gaubert* because the FSM provisions direct employees to consider policy factors such as public safety, costs, loss and

---

[43] *United States v. Gaubert*, 499 U.S. 315, 325 (1991).

[44] *Duke v. Dep't of Agriculture*, 131 F.3d 1407, 1411 (10th Cir. 1997).

[45] Op. p. 14.

[46] *Gaubert*, 499 U.S. at 325.

[47] *Id.* at 324.

[48] *Id.* at 325.

damage to land resources and the availability of firefighting resources. The undisputed material facts in the record demonstrate that Defendant's decisions, including when and where to light the backfire and when to ask the sheriff's office to order an evacuation, were subject to public policy analysis due to the exigencies at the time.[49] In short, decisions regarding the allocation of fire suppression resources are grounded in public policy.[50] Plaintiffs fail to provide proof to the contrary. Accordingly the discretionary function exception applies.[51]

### B. The Misrepresentation Exception

The misrepresentation exception immunizes the United States from liability for "[a]ny claim arising out of ... misrepresentation [or] deceit."[52] The exception extends to a wide range of communicative activity (including failures of communication).[53] The exception "insulates the government against liability for conveying false or inaccurate information."[54]

In their Complaint Plaintiffs assert that they, along with other property owners, placed numerous phone calls to Defendant expressing concerns about the Mill Flat Fire.[55] Each time they expressed concern Plaintiffs were repeatedly assured by Defendant's employees that the fire

---

[49] *See id.*; *Johnson v. United States*, 949 F.2d 332, 339 (10th Cir. 1991) ("The discretionary function exception may apply in the absence of a conscious decision, so long as the Park Service's search and rescue program allowed room for the rangers to make independent policy judgments"); *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993) ("The lack of record evidence describing an analysis of public policy factors in the [National Park Service] decision not to post warnings is immaterial").

[50] *See e.g., Parsons*, 811 F.Supp. at 1420 (noting that each of the challenged actions involved the exercise of "choice and judgment"); *Defrees*, 738 F.Supp. 380, 385 (D.Or. 1990) (concluding that the discretionary function exception barred liability because employees were required to make "social and economic policy decisions" in establishing priorities, assigning personnel and equipment and in deciding what private resources should be used).

[51] In their opposition Plaintiffs raise arguments to defenses that the United States has not raised. Defendant has not asserted the discretionary function exception applies to Plaintiffs' claim regarding communications about the fire. Therefore the Court does not address these arguments in detail under the discretionary exception. In addition Plaintiffs' arguments alleging that the backfire damaged their property are not supported in the record.

[52] 28 U.S.C. 2680(h).

[53] *See United States v. Neustadt*, 366 U.S. 696, 706-07 (1961); *JBP Acquisitions v. United States*, 224 F.3d 1260, 1265 (11th Cir. 2000); *Green v. United States*, 629 F.2d 581, 584 (9th Cir. 1980).

[54] *Muniz-Rivera v. United States*, 326 F.3d 8, 13 (1st Cir. 2003).

[55] Complaint ¶18.

13

would not escape Forest Service property and burn onto private property.[56] Such "statements were false and were made recklessly."[57] Therefore, Plaintiffs argue that Defendant is liable "for failing to warn Plaintiffs of the dangers of property loss due to the fire hazard created by Defendant's employees by failing to timely suppress the Mill Flat Fire . . . ."[58]

These allegations appear to clearly state a claim for misrepresentation. Plaintiffs, however, argue that they "have made claims against Defendant that exceed misrepresentation, therefore Defendant should not be able to use the misrepresentation exception to negate liability because misrepresentation could only be considered a collateral part of the claim."[59] The Court disagrees.

Plaintiffs Complaint alleges the essential components of negligent misrepresentation (reliance and pecuniary loss).[60] Therefore the Court rejects Plaintiffs' characterization of its claims to the extent of it sounding in some other doctrine. Moreover, even claims concerning a complete failure to warn, which Plaintiffs assert, still fall within the purview of this exception.[61] The Court finds the cases Plaintiffs cite to support of their argument where government employees failed to "warn of a specific, known hazard for which the acting agency is responsible"[62] distinguishable based upon the facts of this particular case. The Mill Flat Fire grew and changed directions unexpectedly due to unforeseen changes in the weather. This is not

---

[56] *Id.* at ¶19.

[57] *Id.*

[58] *Id.* at ¶20.

[59] Op. p. 15.

[60] *See Jimenez-Nieves v. United States*, 682 F.2d 1, 4 (1st Cir. 1982); *Estate of Trentadue ex rel.*, 397 F.3d at 855.

[61] *See Neustadt*, 366 U.S. at 706-07; *JBP Acquisitions*, 224 F.3d at 1265; *Green*, 629 F.2d at 584.

[62] Op. p. 15 (quoting *Sutton v. Earles*, 26 F.3d 903, 910 (9th Cir. 1994).

an instance where a government employee chose not to warn of a specific known hazard.[63] Rather, the danger was ever changing and part of a dynamic situation dependent on outside forces such as unpredictable weather conditions. Thus the Court finds the misrepresentation exception applies here where Defendant failed to warn Plaintiffs of the danger.

The Court is also not persuaded by Plaintiffs arguments asserting that their misrepresentation claims are a collateral part of their claims and thus beyond the misrepresentation exception. Although Plaintiffs case includes other claims, the Court determined previously that they fall within the discretionary function exception. There is nothing before the Court to persuade it that the misrepresentation claims should somehow survive as collateral parts of their case when the supposed heart of their case must be dismissed for want of federal subject matter jurisdiction.[64]

Finally, Plaintiffs argue that the misrepresentation exception is inapplicable because they were not involved in business dealings with the United States.[65] In support of this argument Plaintiffs cite to *Estate of Trentadue ex rel. Aguilar v. United States*.[66] In *Trentadue*, the plaintiffs claimed intentional inflection of emotional distress and the government argued that this claim was barred by the misrepresentation exception. In rejecting this argument the court cited to the Supreme Court's decision in *Block v. Neal*[67] and concluded that the "'misrepresentation exception applies only when the action itself falls within the commonly understood definition of

---

[63] *See, e.g., Sutton,* 26 F.3d at 910 (concluding that the failure to adequately post speed limit signs for a known specific hazard precluded the discretionary function exception); *Summers v. Untied States,* 905 F.2d 1212, 1215-17 (9th Cir. 1990) (concluding that the Park Service's failure to warn the public of hot coals to bare feet in fire rings was not protected by the discretionary function exception).

[64] *See Dalehite,* 346 U.S. at 31 (holding that where discretionary function exception of § 2680(a) applied, district court lacked subject matter jurisdiction over cause of action).

[65] Op. 15-16.

[66] 397 F.3d 840 (10th Cir. 2005).

[67] 460 U.S. 289 (1983).

15

a misrepresentation claim.'"[68] The court then went on to hold that the misrepresentation exception did not apply in *Trentadue* because the two "essential components of negligent misrepresentation—reliance and pecuniary loss—are not present on the record before us."[69]

As noted previously, in their Complaint Plaintiffs allege that they placed numerous phone calls to Defendant expressing concern and each time they were reassured that the fire would not escape Forest Service property.[70] Plaintiffs assert that they relied on these false and reckless statements suffering property loss due to the fire.[71] Thus, a plain reading of Plaintiffs' Complaint demonstrates that Plaintiffs are asserting the two essential components of negligent misrepresentation—reliance and pecuniary loss. Therefore, the Court concludes *Trentadue* is distinguishable and the misrepresentation exception applies in this case. Accordingly, Defendant is immune from liability for Plaintiffs' claims because they fall within the misrepresentation exception.

## IV. CONCLUSION AND ORDER

In summary, Plaintiffs have failed to establish that Defendant's conduct did not fall within the discretionary function exception. Further, Plaintiffs have failed to convince this Court that the misrepresentation exception does not apply. Although the circumstances of this case are unfortunate and the Court is sympathetic to Plaintiffs' plight, Defendant is immune from liability under 28 U.S.C. § 2680(a) and 28 U.S.C. 2680(h). This case must therefore be dismissed for lack of subject matter jurisdiction.

---

[68] *Estate of Trentadue*, 397 F.3d at 854 (quoting *Block v. Neal*, 460 U.S. 289, 296 n. 5 (1983)).

[69] *Id.* at 855.

[70] Complaint ¶¶18-19.

[71] *Id.* ¶¶19-20.

16

IT IS THEREFORE ORDERED that Defendant's Motion for summary judgment[72] as to the issue of liability is GRANTED. This action is dismissed and the Clerk of Court is directed to close this case.

DATED this 26 March 2014.

*Brooke C. Wells*
Brooke C. Wells
United States Magistrate Judge

---

[72] Docket no. 24.